# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALLEN WHITTLE, | CASE NO. CV F 10-0429 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR ATTORNEY FEES** |
| vs. | (Doc. 15.) |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## INTRODUCTION

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") seeks from pro se plaintiff James Allen Whittle ("Mr. Whittle") $9,393 for attorney fees incurred to defend Mr. Whittle's dismissed claims and fraudulent document recording arising out his defaulted loan for his Fresno residence ("property"). Mr. Whittle filed no opposition papers. This Court considered Wells Fargo's attorney fees motion on the record and VACATES the May 17, 2010 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court GRANTS Wells Fargo a $3,075 attorney fees award.

## BACKGROUND

### Mr. Whittle's Home Loan

Mr. Whittle executed an August 24, 2007 promissory note ("note") for Wells Fargo's $145,000 home loan. The note was secured by a deed of trust ("DOT") recorded against the property. Mr. Whittle defaulted on the note.

**Mr. Whittle's Dismissed Prior Action**

On January 3, 2010, Mr. Whittle filed in state court a document entitled "Plaintiff's Petition for Injunctive and Other Relief and for Court to Compel Defendant to Produce and Comply with Plaintiff's Demands" ("prior complaint").  Wells Fargo removed the action to this Court as *James Allen Whittle v. Wells Fargo Bank, N.A.*, Case No. CV F 10-0229 LJO SMS ("prior action").  This Court construed the prior complaint to attempt to allege claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq.  The prior complaint alleged that "there is no contractual obligation between Plaintiff and Defendant."  The prior complaint demanded "injunctive relief and/or other relief which will effectively stop (Status Quo) any and all of Defendant's collection activities, including foreclosure sale" of the property.

This Court's February 24, 2010 order ("February 24 order") dismissed with prejudice the prior action on grounds that the prior complaint failed to satisfy F.R.Civ.P. 8 pleading standards and to allege cognizable FDCPA and RESPA claims.  The February 24 order explained that the prior complaint's significant deficiencies barred an attempt to amend it.  The February 24 order noted this Court's concern that "Mr. Whittle has brought this action in absence of good faith and that Mr. Whittle exploits the court system solely for delay or to vex Wells Fargo" and that an "attempt to vex or delay provides further grounds to dismiss this action against Wells Fargo."  Judgment was entered on February 24, 2010 in favor of Wells Fargo and against Mr. Whittle.

This Court's April 12, 2010 order ("April 12 order") awarded Wells Fargo $1,625 attorney fees to seek dismissal of the prior action.

**This Dismissed Action**

On March 4, 2010, prior to removal to this Court, Mr. Whittle filed in state court his "Verified Complaint for Declaratory and Injunctive Relief to Void Power of Sale" ("current complaint") to take issue with the DOT's power of sale clause. The current complaint alleges claims of:

1. "Deprivation of Plaintiff's Due Process" that "Defendants willfully and intentionally concealed" "a small and somewhat hidden and/or disguised provision, known as a Power of Sale Clause . . . to literally confiscate Plaintiff's property without due process";

2. "Deprivation of Plaintiff's Rights under Cognovit Note" that a power of sale clause "is akin in performance to a cognovit note and/or confession of judgment" which "robs the (unknowing maker of certain or otherwise assured rights and remedies)";

3. "Deprivation of Plaintiff's Rights due to Unconscionability and Adhesion Contracts" that "Plaintiff has established enough doubt as to the validity of an enforceable contract that this court is required to determine the enforceability of the contract";

4. "Declaratory Relief" that "Plaintiff clearly has a direct, substantial and present interest in the controversy"; and

5. "Injunctive Relief" as to "Dispossessing Plaintiff of Property."

This Court's April 9, 2010 order ("April 9 order") granted Wells Fargo sua sponte dismissal with prejudice in that dismissal of the prior action was a res judicata bar to this action. The April 9 order noted further grounds for dismissal, including the current complaint's failure to satisfy: (1) F.R.Civ.P. 8 pleading requirements; (2) a tender of the amount owed by Mr. Whittle; and (3) elements of federal statutory claims. The April 9 order did not grant Mr. Whittle an attempt to amend given Mr. Whittle's inability "to cure his claims by allegation of other facts" to support claims. The April 9 order noted this Court's conclusion that "Mr. Whittle has brought this action in absence of good faith and that Mr. Whittle exploits the court system solely for delay or to vex Wells Fargo." The April 9 order explained that an "attempt to vex or delay provides further grounds to dismiss this action against Wells Fargo, especially since this is the second meritless action Mr. Whittle has pursued against Wells Fargo." The April 9 order concluded:

> In addition, this Court will not tolerate Mr. Whittle's further frivolous filings or abuse of the judicial process. This Court ADMONISHES Mr. Whittle that it will impose monetary and/or other sanctions on Mr. Whittle if he continues to vex Wells Fargo and this Court and/or engages in abuse of the judicial process.

An April 9, 2010 judgment was entered in favor of Wells Fargo and against Mr. Whittle.

**Recording Fraudulent Documents**

Wells Fargo notes that on October 27, 2009, Mr. Whittle recorded "fraudulent documents," comprising of:

1. A "Modification of Deed of Trust" that falsely stated that Wells Fargo consented to

1           modify Mr. Whittle's debt to $0;

2    2.   A "Substitution of Trustee" that fraudulently eliminates the original DOT trustee and

3         purports to designate Mr. Whittle as new trustee; and

4    3.   A "Full Reconveyance" that falsely states that all sums secured by the DOT have been

5         satisfied and that improperly reconveys all interests in the property to purported trustee,

6         Mr. Whittle.

Wells Fargo notes that these fraudulent documents have placed a cloud on the property's title to cause Wells Fargo to incur additional attorney fees.

## DISCUSSION

### Attorney Fees Provisions

Wells Fargo seeks attorney fees incurred to defend Mr. Whittle's "meritless complaint" which it characterizes as Mr. Whittle's "attempt to forestall foreclosure and void a secured loan transaction in property." Wells Fargo argues that it is entitled to attorney fees based on attorney fee provisions, its prevailing party status, and reasonableness of its requested attorney fees.

Wells Fargo points to the DOT provision entitled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument," which provides in pertinent part:

> If . . . there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under the Security Instrument . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: . . . appearing in court . . . and . . . paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument. . . .
>
> Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Wells Fargo also points to the note's "Payment of Note Holder's Costs and Expenses" provision, which provides:

> If the Note Holder has required me to pay immediately in full as described above [upon default], the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

In a federal action, state law is relevant to assess "whether the contractual attorney's fee obligation was valid and enforceable." *Matter of Sheridan*, 105 F.3d 1164, 1167 (7th Cir. 1997). "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). California Code of Civil Procedure section 1033.5(a)(1) permits recovery of attorney fees "when authorized by . . . Contract." Under California Code of Civil Procedure section 1021, the "measure and mode" of attorney fees "is left to . . . agreement," unless attorney fees "are specifically provided for by statute." California Civil Code section 1717(a) addresses recovery of attorney fees in contract actions and provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs.

Wells Fargo argues that Mr. Whittle is "bound" to the attorney fees provisions in the DOT and note to entitle Wells Fargo, as the "prevailing party" to recover its reasonable defense costs. Wells Fargo is correct that it is the prevailing party, and focus turns to whether the attorney fees provisions encompass Wells Fargo's defense of Mr. Whittle's claims.

## **Scope Of Attorney Fees' Provisions**

Wells Fargo argues that the current complaint "significantly" affects Wells Fargo's interest in the property to invoke the DOT's attorney fees provision given allegations seeking injunctive relief to halt foreclosure and collection. Wells Fargo contends that "recording fraudulent instruments relating to the Property unquestionably affects the bank's rightful interest. Wells Fargo continues that the current complaint's allegations of "fraud" invoke the note's attorney fees provision in that the allegations address note enforcement.

In *Abdallah v. United Savings Bank,* 43 Cal.App.4th 1101, 1111, 51 Cal.Rptr.2d 286 (1980), the California Court of Appeal explained:

> "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under [Civil Code] section 1717 only as they relate to the contract action." ( *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129 [158 Cal.Rptr. 1, 599 P.2d 83].) However, "[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." ( *Id.* at pp 129-130.) For example, the holder of a

5

note which provides for payment of fees incurred to collect the balance due is entitled to fees incurred in defending itself against "interrelated" allegations of fraud. (*Wagner v. Benson* (1980) 101 Cal.App.3d 27, 37 [161 Cal.Rptr. 516].) Here, the court could reasonably find that appellants' various claims were " 'inextricably intertwined' " (*Finalco, Inc. v. Roosevelt* (1991) 235 Cal.App.3d 1301, 1308 [286 Cal.Rptr. 616]), making it "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units" (*Fed-Mart Corp. v. Pell Enterprises, Inc.* (1980) 111 Cal.App.3d 215, 227 [168 Cal.Rptr. 525]).

Moreover, "an obligation to pay attorney fees incurred in the enforcement of a contract 'includes attorneys' fees incurred in defending against a challenge to the underlying validity of the obligation.'" *Siligo v. Castellucci*, 21 Cal.App.4th 873, 878, 26 Cal.Rptr.2d 439 (1994) (quoting *Finalco, Inc. v. Roosevelt,* 235 Cal.App.3d 1301, 1308, 3 Cal.Rptr.2d 865 (1991)).

The current complaint sought to significantly affect Wells Fargo's right in the property by seeking to stop foreclosure and collection on Mr. Whittle's defaulted loan. Mr. Whittle brought this action ostensibly to prevent Wells Fargo to protect its rights as a foreclosing lender. With this action pending, Wells Fargo's foreclosure attempts were stymied. Wells Fargo was compelled to defend the current complaint's meritless, barred claims. Moreover, the complaint's attempt to void Wells Fargo's security interest called into question DOT and note enforcement. As such, the DOT and note's attorney fees provision encompass defense of Mr. Whittle's claims at issue here to entitle Wells Fargo to an attorney fees award. However, Mr. Whittle's recordation of fraudulent documents is not directly before this Court to prevent an award of attorney fees to address the documents.

### **Attorney Fees' Reasonableness**

Wells Fargo contends that its $9,393 attorney fees are reasonable. "The matter of reasonableness of attorney's fees is within the sound discretion of the trial judge." *Stokus v. Marsh,* 217 Cal.App.3d 647, 656, 266 Cal.Rptr. 90 (1990).

The Ninth Circuit Court of Appeals has outlined factors to consider for attorney fees reasonableness:

> In calculating reasonable attorney fees the court must consider the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the

nature and length of the professional relations with the client, and (12) awards in similar cases.

*Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1341-1342 (9th Cir. 1986).[1]

To support fees' reasonableness, defense counsel provides March and April 2010 billing statements and an itemization of billings for specific tasks to defend this action by five attorneys (with $320, $300 and $250 hourly billing rates) and a paralegal (with a $145 hourly billing rate). The primary, most meaningful defense of this action was preparation of a F.R.Civ.P. 12(b)(6) motion to dismiss which was not opposed by Mr. Whittle given this Court's sua sponte dismissal. The billing statements reflect that the motion was chiefly prepared by an eight-year attorney who devoted 9.1 hours at a $250 hourly billing rate, for a total of $2,275. Given Mr. Whittle's continued vexing of Wells Fargo, Wells Fargo is entitled to attorney fees to prepare this motion for attorney fees. The billing statements reflect the motion was chiefly prepared by an eight-year attorney who devoted 3.2 hours at a $250 billing rate, for a total of $800. As such, the barometer for reasonable attorney fees is preparation of the motions to dismiss and for attorney fees, not other unrelated tasks reflected in the billing statements. A $250 hourly billing rate appears reasonable for the tasks and the preparing attorney's qualifications. As such, an appropriate attorney fees award is $3,075.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court GRANTS Wells Fargo a $3,075 attorney fees award.

IT IS SO ORDERED.

**Dated:   May 5, 2010**                     **/s/ Lawrence J. O'Neill**
                                              UNITED STATES DISTRICT JUDGE

---

[1] The California Court of Appeal also has provided factors to consider for an attorney fees award:

In determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding, the court may and should consider "the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded ...; the intricacies and importance of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed." [Citations.]

*Hadley v. Krepel*, 167 Cal.App.3d 677, 682, 214 Cal.Rptr. 461 (1985).